David R. Ehrlich, Esq. (de-9786)
Amanda B. Slutsky (as-5655634)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dehrlich@staggwabnik.com
aslutsky@staggwabnik.com

*Attorneys for Plaintiff*
*Joseph Muller, on behalf of himself*
*and others similarly situated*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSEPH MULLER, *on behalf of himself and others similarly situated employees*,

                Plaintiff,

-against-

QWIK LOGISTICS GROUP LLC a/k/a QWIK LOGISTICS,

                Defendant.
-----------------------------------------------------------------X

Civil Action No.:

**COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Joseph Muller ("Plaintiff"), individually and on behalf of all others similarly situated employees, by his attorneys Stagg Wabnik Law Group LLP, complaining of Qwik Logistics Group LLC a/k/a Qwik Logistics ("Defendant") herein alleges as follows:

**NATURE OF ACTION**

1.     Plaintiff and others similarly situated bring this within Action to recover wages, benefits and other damages based on Defendant's misclassification of him and others similarly situated as independent contractors when in fact Plaintiff and the others who are similarly situated

1

were full-time employees, which resulted in violations of the Fair Labor Standards Act ("FLSA"), various provisions of the New York Labor Law ("NYLL") and its accompanying regulations.

2. As a result of Defendant's improper and unlawful misclassification, Defendant illegally deprived Plaintiff and others similarly situated employees from (a) receiving wages for overtime, (b) receiving their earned tips, (c) receiving paid sick days, (d) being afforded employer sponsored medical benefits; (e) receiving unemployment insurance benefits, and (f) all other benefits related to being an employee rather than an independent contractor. In addition, because Plaintiff and those similarly situated employees were deliberately and wrongfully misclassified as independent contractors rather than employees, Defendant also violated New York Labor Law section 195 by failing to provide them with wage notices or wage statements.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C §§ 201, 216(b) *et seq*.

4. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant maintains their principal place of business in the District.

## PARTIES

6. At all relevant times herein, Plaintiff was and is a resident of Nassau County, New York, and was employed by Defendant as a delivery driver.

7. At all relevant times herein, Defendant is a domestic limited liability company with a principal place of business at 44 W Jefryn Blvd., Suite L, Deer Park, New York 11729.

8. At all relevant times herein, Defendant maintained, controlled, had oversight, and direction over Plaintiff and similarly situated employees, including, but <u>not</u> limited to, hiring, firing, discipline, timekeeping, payroll and other terms or conditions and employment practices.

9. At all relevant times herein, Defendant had a gross annual volume of sales of not less than $500,000 (exclusive of excise tax at the retail level that are separately stated). Upon information and belief, Defendant and/or its enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in Defendant's business on a daily basis are goods produced outside of the State of New York.

## STATEMENT OF FACTS

*Plaintiff's Job*

10. Defendant operated a delivery service which serviced the overflow delivery orders from entities such as Stop and Shop and Fresh Direct.

11. In or around September 2020, Defendant hired Plaintiff to work as a delivery driver and misclassified him as an independent contractor.

12. From in or around September 2020 through February 2022, Plaintiff worked between four to six days per week, and between 30 and 50 hours per week.

13. Defendant told Plaintiff what days during the week he had to work. Plaintiff was not free to reject working on the days given to him by Defendant without negative consequences. When Plaintiff was not able to work on a particular day on which Defendant scheduled him, he worked to find another Defendant employee to cover for him.

14. For each day that Plaintiff worked, he was given a specific schedule by Defendant that listed all the deliveries he had to make. Plaintiff was required to follow this schedule.

15. Plaintiff was required to clock in when he arrived at the central location to pick up the vehicle he was to use for the deliveries and clock out when he returned the vehicle at the end of the day.

16. Plaintiff was required to use a vehicle for the deliveries that was either (a) owned by Defendant in which Defendant paid for the insurance, maintenance and repairs, or (b) rented by Defendant from truck rental companies, such as Empire, in which Defendant paid for the rental fees and all associated expenses such as insurance. In all instances, Defendant reimbursed Plaintiff for any gas needed to operate the vehicles.

17. Defendant, through a GPS system, tracked Plaintiff's whereabouts throughout the workday.

18. Defendant required that Plaintiff take pictures of the vehicle's GPS system when he arrived at the specific destination to make a delivery and of the goods that he dropped off at the specific location. Plaintiff was then required to send the pictures to his supervisor through a group chat application called GroupMe. Defendant instituted this rule to monitor Plaintiff throughout the workday and ensure that Plaintiff made the deliveries at the correct location.

19. While Plaintiff worked for Defendant, Defendant installed cameras inside the vehicles that were owned by Defendant, which Defendants used to further monitor Plaintiff (and the other employees).

20. At first, Plaintiff was paid an hourly rate of $20 per hour. This rate was told to Plaintiff by Defendant—there was no negotiation between the parties as to the rate.

21. When Plaintiff made deliveries, he often received tips that customers paid using the computer application that was used to schedule and pay for the deliveries. During the period that Defendant paid Plaintiff $20 per hour, Defendant retained the tips and did not provide Plaintiff

4

with the tips he earned. The arrangement of paying Plaintiff $20 per hour and not providing him with his tips took place over the course of approximately one year.

22. In or around February 2021, Defendant later changed their policy without negotiation with Plaintiff or the other employees, and reduced Plaintiff's rate of pay to $13 per hour, but allowed him to keep the tips that he earned for making the deliveries.

23. Although Plaintiff worked more than 40 hours per week on occasion (approximately once per month), he never received overtime pay, *i.e.*, he did not receive time and a half for all hours worked over 40 in a given week. There were weeks in which he worked more than 50 hours in a week and did not receive time and a half.

24. Defendant did not provide Plaintiff with any paid sick days. If Plaintiff could not work due to an illness or injury, he simply did not get paid.

25. Defendant did not provide Plaintiff with a wage notice reflecting his rate of pay, his overtime rate, or day on which he was to receive his pay.

26. Defendant paid Plaintiff as an IRS 1099 contractor and failed to provide him with a wage notice that showed the deductions for taxes, unemployment insurance, or anything else. Defendant did not make any federal or state withholdings with regard to Plaintiff's pay, and failed to pay into the social security system or any other federal or state programs designed for employees.

27. While working for Defendant and using Defendant's truck or the trucks rented by Defendants, Plaintiff received traffic tickets and/or fines. At no time did Defendant ask Plaintiff if it could deduct the value of those tickets and/or fines from his wages, Defendant did so without any notice or consent.

28. Defendant did not pay into the unemployment insurance benefits system for Plaintiff.

29. Defendant did not offer Plaintiff any health insurance benefits.

30. Based on the above, Plaintiff was a non-exempt employee pursuant to the FLSA and NYLL.

31. Defendant purposely and knowingly misclassified Plaintiff as an independent contractor and deprived him of all of the benefits of being an employee, including, but not limited to, overtime pay, paid sick days, unemployment insurance benefits, and being offered health insurance coverage.

32. Plaintiff is informed and believes that all of the delivery drivers and many of the warehouse workers were also purposely misclassified as independent contractors, and were deprived of the benefits of an employee, including, but not limited to, overtime pay, paid sick days, unemployment insurance benefits and being offered health coverage.

## COLLECTIVE ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of himself and all similarly situated current and former employees employed by Defendant who were misclassified as independent contractors for up to the last six years, through the entry of judgment in this case ("Collective Action Members").

34. At all relevant times herein, Plaintiff and the Collective Action Members are similarly situated in that they are or were full-time employees who were misclassified as independent contractors.

35. All of the delivery drivers were similarly situated to Plaintiff in that they were told what days they had to work, were given a schedule to follow, were monitored by Defendant

through a GPS system, were required to use vehicles either owned or rented by Defendant, were required to send pictures of the GPS system and the goods delivered at the specific location to management for each delivery through the GroupMe application, and often had to use vehicles that had cameras installed by Defendant for further supervision.

36. All of the delivery drives were similarly situated to Plaintiff in that they were told what their rate of pay was and could not negotiate.

37. During the first six to seven months or so Plaintiff worked for Defendant, none of the drivers received their earned tips and thus were similarly situated.

38. Plaintiff and the other delivery drivers were similarly situated in that they did not receive overtime pay for hours worked over 40 in a given week.

39. Plaintiff and the other delivery drivers were similarly situated in that they did not receive any paid sick days, and Defendant did not pay into the unemployment insurance benefits system on their behalf.

40. Plaintiff and the other delivery drives were similarly situated because Defendant did not offer them an opportunity to receive medical benefits.

41. Upon information and belief, none of the delivery drives received the legally required—under NYLL § 195- wage notice and/or wage statements.

42. Defendant's actions were intentional, and Defendant knew or should have known its actions violate the FLSA, NYLL and their respective accompanying regulations

43. Plaintiff and Collective Action Members all fit into a clear and defined category as misclassified delivery drivers employed by Defendant, who: (1) did not receive Wage Theft Prevention notices; (2) worked over forty hours per week without regular or overtime pay; (3) did not receive tips to which they were entitled; (4) did not receive proper wage statements; and (5)

did not receive benefits, such as unemployment insurance benefits, paid sick days, and medical benefits.

44. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the field of employment law and collective action litigation. Plaintiff has no interest that is contrary to or in conflict with those members of this collective action.

45. A collective action is necessary because the prosecution of separate actions by individual members would risk creating either inconsistent or varying adjudications with respect to individual members of this collective action.

46. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, in as much as the damages suffered individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.

**AS AND FOR A FIRST CLAIM**
**(Unpaid Overtime Wages in Violation of the FLSA)**

47. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

48. At all relevant times herein, Defendant was an employer engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207(a), and Defendant engaged in interstate commerce.

49. Plaintiff and Collective Action Members were non-exempt employees of Defendant.

50. During their employment with Defendant, Plaintiff and Collective Action Members worked over forty hours per week on many occasions and were not paid overtime wages. Defendant failed to pay Plaintiff and Collective Action Members overtime wages at the appropriate hourly rate pursuant to the FLSA, for all hours worked in excess of forty (40) hours per week.

51. Defendant's failure to pay overtime premiums was willful.

52. Defendant's failure to pay time and one half for all hours worked above 40 hours per week by Plaintiff and others similarly situated is a violation of 29 U.S.C. § 207(a)(1).

53. As a result of the unlawful acts of Defendant, Plaintiff and Collective Action Members were deprived of their earned overtime wages in amounts to be determined at trial, in addition to liquidated damages, prejudgment interest, attorney's fees, and such other legal and equitable relief as the court deems just and proper.

**AS AND FOR A SECOND CLAIM**
**(Failure to Pay Tips to Tipped Employees in Violation of the FLSA)**

54. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

55. During their employment, Plaintiff and Collective Action Members provided services for which they received tips.

56. From in or around September 2020 to approximately September 2021, Plaintiff was an hourly employee who delivered goods to people's homes and businesses.

57. Collective Action Members were hourly employees who delivered goods to people's homes and businesses.

58. As a result of performing that service, the customers often provided Plaintiff and Collective Action Members with a tip on the application the customer used to pay for the delivered goods.

59. During that approximate one year period from September 2020 to September 2021, Defendant did not provide Plaintiff with the tips he earned and kept all of the tips made by customers on the application.

60. Upon information and belief, Defendant did not provide the Collective Action Members with the tips they earned and kept all of the tips made by customers on the application.

61. Plaintiff and Collective Action Members are "tipped employees" as defined in the FLSA § 531.50(d).

62. Defendant's actions of taking and pocketing the tips earned by Plaintiff and Collective Action Members is a violation of the FLSA § 531.50(c) which states that an employer may not keep tips earned by its employees for any purposes.

63. Defendant's refusal to pay Plaintiff and Collective Action Members their earned tips was deliberate and unlawful.

64. As a direct and proximate cause thereof, Plaintiff and Collective Action Members are entitled to damages for Defendant's willful failure to pay earned tips, as may be proven at trial.

## AS AND FOR A THIRD CLAIM
### (Unpaid Overtime Wages in Violation of the NYLL)

65. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

66. At all relevant times herein, Defendant was an employer within the meaning of NYLL §§ 2 and 651.

67. Plaintiff and Collective Action Members were non-exempt employees of Defendant.

68. During their employment with Defendant, Plaintiff and Collective Action Members worked over forty hours per week on many occasions and were not paid overtime wages.

Defendant failed to pay Plaintiff and Collective Action Members overtime wages at the appropriate hourly rate pursuant to the NYLL, for all hours worked in excess of forty (40) hours per week.

69. Defendant's failure to pay overtime premium was willful.

70. Plaintiff and Collective Action Members are entitled to recover unpaid overtime wages for up to six years prior to the filing of this complaint and liquidated damages because Defendant's violations were willful. Plaintiff and Collective Action Members are also entitled to applicable penalties and attorney's fees.

71. As a result of the unlawful acts of Defendant, Plaintiff and Collective Action Members have been deprived of earned overtime wages in amounts to be determined at trial, in addition to liquidated damages, penalties, prejudgment interest, attorney's fees, and such other legal and equitable relief as the court deems just and proper.

## AS AND FOR A FOURTH CLAIM
### (Violation of NYLL § 196-d) (Illegal Tip Retention)

72. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

73. Section 196-d of the NYLL prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

74. A charge purported to be a gratuity must be distributed in full as gratuities to the service employers or food service workers who provide the service.

75. During that approximate one-year period from September 2020 to September 2021, Defendant did not provide Plaintiff with the tips he earned and kept all of the tips made by customers to Plaintiff on the application.

11

76. Upon information and belief, Defendant did not provide the Collective Action Members with the tips they earned and kept all of the tips made by customers to those Collective Action Members on the application.

77. Defendant's actions violate NYLL § 196-d.

78. Due to Defendant's practices of regularly keeping Plaintiff and Collective Action Members tips, Plaintiff and Collective Action Members have suffered in the form of significantly reduced wages.

## AS AND FOR A FIFTH CLAIM
### (Violation of NYLL § 195(1))

79. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

80. Defendant failed to furnish to Plaintiff and Collective Action Members with the information required by the Wage Theft Prevention Act (NYLL § 195(1)) at the time of their hiring.

81. Defendant was aware or should have been aware of their statutory obligation to provide such information to Plaintiff and Collective Action Members.

82. Due to Defendant's violation of NYLL § 195(1), Plaintiff and Collective Action Members are entitled to recover statutory damages from Defendant in the amount capped at $5,000.00, plus attorney's fees and costs of this action.

## AS AND FOR A SIXTH CLAIM
### (Violation of NYLL § 195(3))

83. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

84. Defendant repeatedly failed to provide Plaintiff and Collective Action Members with an accurate wage statement at the time Plaintiff and Collective Action Members were paid as required by Wage Theft Prevention Act (NYLL § 195(3)).

85. Defendant was aware or should have been aware of their statutory obligation to provide such information to Plaintiff and Collective Action Members.

86. Due to Defendant's violation of NYLL § 195(3), Plaintiff and Collective Action Members are entitled to recover statutory damages from Defendant in the amount capped at $5,000.00 each, plus attorney's fees and costs of this action.

## AS AND FOR A SEVENTH CLAIM
### (Violation of NYLL § 196-b) (Failure to Provide Paid Sick Days)

87. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

88. Pursuant to NYLL § 196-b: "Every employer shall be required to provide its employee with sick leave…(b) for employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year…."

89. Defendant failed to provide Plaintiff and Collective Action Members with forty hours of paid sick leave during each calendar year.

90. Defendant was aware or should have been aware of their statutory obligation to provide such information to Plaintiff and Collective Action Members.

91. Due to Defendant's violation of NYLL § 196-b, Plaintiff and Collective Action Members are entitled to recover damages from Defendant in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CLAIM
### (Illegal Wage Deductions in Violation of NYLL § 193)

92. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

93. Defendant unlawfully deducted the price of traffic tickets and/or fines from Plaintiff and Collective Action Members' wages without notice and for no apparent or lawful reason.

94. The deduction of the value of traffic tickets and/or fines from Plaintiff and Collective Action Members' wages constitutes a wage deduction in violation of NYLL § 193.

95. This deduction from Plaintiff and Collective Action Members' wages was not for the benefit of Plaintiff or Collective Action Members, nor was it approved by Plaintiff and Collective Action Members.

96. Defendant's deductions from Plaintiff and Collective Action Members' wages were willful and intentional.

97. Due to the Defendant's practices, Plaintiff and Collective Action Members suffered damages in the form of the value of traffic tickets and/or fines.

## AS AND FOR A NINTH CLAIM
### (Violation of the Affordable Care Act for Failure to Offer Health Benefits)

98. Plaintiff and Collective Action Members repeat, reallege, and reiterate all of the allegations stated above as if fully set forth herein.

99. Defendant unlawfully misclassified Plaintiff and Collective Action Members as independent contractors instead of full-time permanent employees entitled to health benefits under the Employer Benefit Plan.

100. Defendant's refusal to offer Plaintiff and Collective Action Members the health benefits they were entitled to under the Employer Benefit Plan was unlawful and in violation of the ACA.

101. Defendant's misclassification of Plaintiff and Collective Action Members was an abuse of discretion, arbitrary and capricious, and violates 124 Stat. 119 *et seq*.

102. Defendant's failure to offer health benefits in violation of the Affordable Care Act damaged Plaintiff and Collective Action Member, including, but not limited to, all the health benefits due and owing had Defendant complied with their obligations under the Affordable Care Act.

103. Plaintiff and the Collective Action Members are entitled to damages in an amount to be determined at trial, including interest, attorneys' fees, and costs.

## JURY DEMAND

104. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and Collective Members, respectfully requests judgment against Defendant:

A. Certifying the collective action, and naming Plaintiff as representative of the Collective Action, and Plaintiff's attorneys as Collective Action counsel to represent the Collective Action Members;

B. Declaring that Defendant engaged in unlawful employment practices prohibited by the federal laws and laws of the State of New York;

C. Awarding damages to Plaintiff and Collective Action Members for all lost wages, and unpaid wages and benefits resulting from Defendant's unlawful employment practices;

D. Directing Defendant to pay Plaintiff and Collective Action Members statutory damages capped at $5,000.00, plus attorney's fees and costs of this action, for violations of NYLL § 195(1);

E. Directing Defendant to pay Plaintiff and Collective Action Members statutory damages capped at $5,000.00, plus attorney's fees and costs of this action, for violations of NYLL § 195(3);

F. Directing Defendant to pay Plaintiff and Collective Action Members their actual damages in the amount of the tickets and/or fines deducted from wages as provided by the NYLL;

G. Awarding Plaintiff and Collective Action Members punitive damages, in an amount to be determined at trial;

H. Awarding Plaintiff and Collective Action Members costs that Plaintiff and Collective Action Members have incurred in this action, disbursements of this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

I. Awarding such other and further relief as the court deems just and equitable.

Dated: Garden City, New York
May 5, 2022

Stagg Wabnik Law Group LLP

/s/ David R. Ehrlich
―――――――――――――――――――
David R. Ehrlich (de-9786)
Amanda B. Slutsky (as-5655634)
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dehrlich@staggwabnik.com
aslutsky@staggwabnik.com